IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**FILED**
UNITED STATES DISTRICT COURT
ALBUQUERQUE NEW MEXICO
DEC 5 2000
*R Tha Hommack*
CLERK

YOLANDA LODOZA,

        Plaintiff,

vs.                                No. CIV 98-1161 MV/LFG

KENNETH S. APFEL, Commissioner,
Social Security Administration,

        Defendant.

## MAGISTRATE JUDGE'S ANALYSIS AND RECOMMENDED DISPOSITION[1]

       Plaintiff Yolanda Lodoza ("Lodoza") invokes this Court's jurisdiction under 42 U.S.C.

§ 405(g) seeking judicial review of a final decision of the Commissioner of Social Security

("Commissioner"). The Commissioner determined that Lodoza was not eligible for disability

insurance benefits ("DIB"). Lodoza moves this Court for an order reversing the Commissioner's

final decision and remanding for a rehearing.

### Factual Summary and Procedural History

       Lodoza was born on April 24, 1956 and was 41 years old at the time of the administrative

hearing in this case. (Transcript of Proceedings, at 27, 69; hereafter referred to in the form, "Tr.

27, 69"). She completed the sixth grade and does not speak English. (Tr. 94, 96). Lodoza's

---

[1]Within ten (10) days after a party is served with a copy of the legal analysis and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such analysis and recommendations. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the analysis and recommendations. If no objections are filed, no appellate review will be allowed.



previous work experience is as a chile sorter and dairy worker.  (Tr. 30-31, 86, 113).

Lodoza alleges she has been unable to work since February 25, 1994, when she was injured at work.  She had just finished milking a cow when fell from a step ladder and landed on her buttocks, injuring her back.  (Tr. 30-31, 142, 152, 185).  Her application was denied at the initial and reconsideration stages, and she sought timely review from an Administrative Law Judge ("ALJ").  An administrative hearing was held on July 16, 1997.  In a decision dated August 12, 1997, the ALJ found that Lodoza was not disabled within the meaning of the Social Security Act and held that Lodoza was not entitled to DIB benefits.[2]  Lodoza challenged this determination to the Appeals Council which denied her request for review on August 7, 1998.  This appeal followed.

## Standards for Determining Disability

In determining disability, the Commissioner applies a five-step sequential evaluation process.[3] The burden rests upon the claimant throughout the first four steps of this process to prove disability, and if the claimant is successful in sustaining his burden at each step, the burden then shifts to the Commissioner at step five.  If at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.[4]

Briefly, the steps are:  at step one, claimant must prove he is not currently engaged in substantial gainful activity;[5] at step two, the claimant must prove his impairment is "severe" in that

---

[2]The decision of the ALJ is attached to this Analysis and Recommended Disposition.

[3]20 C.F.R. § 404.1520(a)-(f) (2000); Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

[4]20 C.F.R. § 404.1520(a)-(f)(2000); Sorenson v. Bowen, 888 F.2d 706, 710 (10th Cir. 1989).

[5]20 C.F.R. § 404.1520(b)(2000).

it "significantly limits [his] physical or mental ability to do basic work activities . . . ;"[6] at step three, the Commissioner must conclude the claimant is disabled if he proves that these impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1 (1999);[7] and, at step four, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his past relevant work.[8]

If the claimant is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, at step five, that considering claimant's residual functional capacity ("RFC"),[9] age, education and past work experience, he is capable of performing other work.[10] If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove he cannot, in fact, perform that work.[11] In the case at bar, the ALJ made his dispositive determination of non-disability at step five of the sequential evaluation.

Lodoza contends that the final administrative decision is not supported by substantial evidence, that the Commissioner did not carry his burden of proof, and that the Commissioner did not apply the correct legal standards.

---

[6]20 C.F.R. § 404.1520(c)(2000).

[7]20 C.F.R. § 404.1520(d) (2000). If a claimant's impairment meets certain criteria, that means his impairments are "severe enough to prevent [him] from doing any gainful activity." 20 C.F.R. § 416.925 (2000).

[8]20 C.F.R. § 404.1520(e) (2000).

[9]The Commissioner has established RFC categories based on the physical demands of various types of jobs in the national economy. Those categories are: sedentary, light, medium, heavy and very heavy. 20 C.F.R. § 405.1567 (2000).

[10]20 C.F.R. § 404.1520(f) (2000).

[11]Muse v. Sullivan, 925 F.2d 785, 789 (5th Cir. 1991).

## Standard of Review and Allegations of Error

On appeal, the Court considers whether the Commissioner's final decision is supported by substantial evidence, and whether the Commissioner used the correct legal standards.  Glenn v. Shalala, 21 F.3d 983 (10th Cir. 1994).  To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a mere scintilla, but it need not be a preponderance.  Trimiar v. Sullivan, 966 F.2d 1326, 1329 (10th Cir. 1992; Muse, at 789.  In Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996) the Tenth Circuit described, for purposes of judicial review, what the record should show:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence.  Rather, in addition to discussing the evidence supporting his decision, the ALJ must also discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence he rejects.  (citations omitted).

If supported by substantial evidence, the decision of the Commissioner is conclusive and must be affirmed.

Lodoza claims the administrative decision is not supported by substantial evidence, in that the ALJ did not properly consider the opinions of certain of Lodoza's treating physicians, and that he further erred in finding that her testimony was not credible.

## Discussion

A.  Medical History

Lodoza sustained her back injury on February 25, 1994.  She reports that she was hospitalized for five days following the injury; however, no medical records of this hospitalization have been included in the record.  X-rays were taken at the time of the injury and, although no radiology reports of these x-rays are included in the record, the consulting physician who examined Lodoza in

4

September 1996 apparently reviewed them, as he states in his report that "X-rays of the pelvis, spine, skull, and extremities were taken and all were negative." (Tr. 162).

Lodoza did not seek further medical treatment until May 24, 1994, when she went to see Dr. Edwin L. Kennedy, M.D., an occupational medicine specialist, whom she continued to see until April 26, 1995 (Tr. 116-144). At the first visit, Dr. Kennedy reported that Lodoza had been hospitalized after the accident and was thereafter sent to rehabilitation, but that her condition had not improved and she was sent to him for a second opinion. (Tr. 142). Dr. Kennedy noted that Lodoza appeared to be "in a fair amount of distress," with pain and restricted range of motion in the cervical and lumbar spine. He ordered a bone scan to rule out bony abnormality and told Lodoza not to return to work until the diagnostic studies were completed. (Tr. 143-44).

A bone scan performed on May 27, 1994 showed no significant abnormality. (Tr. 150). Dr. Kennedy then sent Lodoza for an MRI of the lumbar spine, suspecting radiculopathy[12] at L4. (Tr. 141). The MRI was performed on June 15, 1994; it showed no disc herniation, although minor degenerative disc changes were noted. (Tr. 149). On June 20, 1994, Dr. Kennedy, noting that both the bone scan and MRI were negative, released Lodoza to return to sedentary or light work with certain restrictions. He also referred her to Dr. Richard N. Castillo, M.D., an orthopedic specialist. (Tr. 138-39).

Consistently throughout Dr. Kennedy's progress notes are references to Lodoza's "pain behavior," including such actions as limping about the office, holding her hand on her back and neck as she ambulates around the room, with "much groaning, grimace and discomfort," and "panting,

---

[12]Radiculopathy: Disease of the nerve roots. Dorland's Illustrated Medical Dictionary 1108 (26th ed. 1981).

puffing, grimace and apparent discomfort." (Tr. 119, 123, 126, 132, 134, 138). Dr. Castillo, who examined Lodoza once on August 12, 1994 on referral from Dr. Kennedy, noted that Lodoza was unable to toe walk or squat because of "complaints of pain," and that her range of motion and inability to do a spring test were due to "perceived pain." He assessed her as having mechanical low back pain but without symptoms of radiculopathy, and he noted in his report that Lodoza exhibited "marked symptom magnification." He concluded that no further diagnostic intervention was indicated and recommended a physical therapy program to strengthen the heart, lungs, and lower back muscles. (Tr. 136-37).

During his course of treatment, Dr. Kennedy also referred Lodoza to the Center for Rehabilitation and Evaluation ("CORE"), for a functional capacity evaluation by an occupational therapist. The therapist reported back, on September 22, 1994, that Lodoza exhibited "pain behaviors," such as sighing, groaning, facial grimacing, and hand to her back, but that "[i]ndicators show symptom magnification, and poor consistency of effort. Secondary gain is evident." (Tr. 186). The therapist concluded that Lodoza was functioning "in the sedentary level," and she recommended no restriction of activities, except perhaps that her driving would be limited by sitting tolerance. (Tr. 187-88). At a follow-up visit on October 4, 1994, Dr. Kennedy again noted that Lodoza exhibited "substantial pain behavior" with "much apparent discomfort, including groaning, grimace and panting for pain behaviors." He noted that she was "exquisitely tender even to light touch across the lumbar spine," and noted that muscle strength was adequate, although "there is a give-away response with the examination, which is probably voluntary." (Tr. 126).

As early as June 20, 1994, four months after the milking accident, Dr. Kennedy stated in his progress notes that Lodoza was ready to return to sedentary work. (Tr. 139). He made the same

6

statement in his progress notes of September 28, 1994 (Tr. 127) and January 20, 1995 (Tr. 122), and by February 13, 1995, he had released her to "work in the light capacity, perhaps higher." (Tr. 120). He again stated, at her final visit on April 26, 1995, that Lodoza may return to work "in the light capacity." Lodoza stopped seeing Dr. Kennedy after the April 26, 1995 visit, apparently because she was not entitled to any further medical cost coverage from her employer. (Tr. 117-118).

However, on June 2 of that year, Lodoza went to see Dr. Jesus Gonzales, M.D. for the first of four visits between June and November of 1995. Dr. Gonzales stated in his progress notes of June 2, 1995 that "this pt [patient] is unable to work at present time." (Tr. 159). There is no indication that Dr. Gonzales performed any diagnostic tests on Lodoza or even conducted a physical examination; indeed, the progress notes for the first visit consist entirely of a listing of the patient's subjective complaints and the doctor's conclusion that she is unable to work. This conclusion is unsupported by anything in the doctor's progress notes save for Lodoza's own statements. Under "plan," he noted only that he will obtain her earlier medical records. (Id.).

In progress notes from Lodoza's second visit on July 24, 1995, Dr. Gonzales noted that he received certain medical records, stated that Lodoza has continued to have increased pain and that she will need a second opinion by a back specialist. Again, there is no indication that he conducted a physical examination of Lodoza or ordered any diagnostic tests. (Tr. 158). For the third visit on September 28, 1995, Dr. Gonzales' progress notes stated only that Lodoza reported increased pain in the shoulder and spine and was unable to buy medications. He noted also that he was sending her to Dr. McCutcheon. (Tr. 157). In progress notes for Lodoza's final visit to Dr. Gonzales on November 14, 1995, the doctor again gives no indication that he examined the patient, noting only that she had been seen by Dr. McCutcheon and reciting Dr. McCutcheon's findings. His last progress

7

note stated that Lodoza needed a lumbar discogram to try to get a diagnosis. (Tr. 156). There are no further records of any visits to Dr. Gonzales, except that Lodoza saw Dr. McCutcheon again in the spring of 1997, apparently on referral by Dr. Gonzales. (Tr. 181).

Lodoza was seen only twice by Dr. McCutcheon, on October 23, 1995 and April 15, 1997. His reports of these visits are similar, although they do indicate some deterioration in Lodoza's condition between the two visits. He stated in the 1997 report that the patient was there "for an evaluation of her symptoms, which today she rates as almost unbearable." (Tr. 181). In the 1995 report, Dr. McCutcheon noted that Lodoza can sit for 15-30 minutes and stand for 30 minutes before the onset of symptoms; in the 1997 report, the times were reduced to 15 minutes for sitting and 20 minutes for standing. (Tr. 152, 181). He provides a "pain diagram" for each visit. The 1995 diagram indicates slight to moderate restriction of Lodoza's range of motion in the lumbar spine with various movements and pain ranging from +2 to +4 on a scale of 1 to 4; in 1997, all range of motion restrictions are listed as severe, and all pain ratings are +4. (Tr. 153, 182). Both reports state a "clinical impression" of internal disc disruption, level unknown. (Tr. 153, 182). In both reports, Dr. McCutcheon gives his opinion that "The patient's history and clinical findings are consistent and do give evidence to support the [her] complaints." (Tr. 154, 182). No clinical findings are detailed and no objective evidence supporting this statement is listed in the report. He did not order any diagnostic tests, and his progress notes give no details as to how the clinical findings support Lodoza's complaints.

The record indicates that Lodoza did not seek further medical treatment after her last visit to Dr. Gonzales on November 14, 1995, aside from the one return visit to Dr. McCutcheon in April 1997. (Tr. 162). The only other medical evidence on the record is the report of the consultative

8

examination by Dr. Nicholas Nillo, who examined Lodoza on September 17, 1996. He noted in his report that, since October 1995, no further tests had been done on Lodoza, no specific treatment was given, and she had no further care for her back condition. (Id.). At the time of the examination, Lodoza was not using any prescription medications, only over-the-counter Tylenol for pain. (Id.). He noted Lodoza's complaints consisted of a pulling and pressure-like discomfort in the lower right back intermittently, radiating along the buttock and thigh, with increased discomfort with activity and with prolonged sitting or standing for over two hours at a time. (Id.).

Dr. Nillo also noted that Lodoza entered the office with an apparently normal gait and without any apparent distress, but that she later rose from the interview chair in the doctor's presence, "apparently to express or impress upon me that she is in discomfort." Dr. Nillo's conclusion was that Lodoza had probable mechanical low back discomfort, most likely a chronic lumbar strain, and he took note of Lodoza's subjective complaints of discomfort throughout the dorsal area and upper extremities. However, he found no objective evidence of radiculopathy or discogenic disease and "no objective evidence of significant functional impairment at this time."

B. ALJ's Evaluation of Treating Physician's Reports

Lodoza argues that the ALJ's conclusion of no disability is not supported by substantial evidence, in part because he improperly rejected the conclusions of her treating physicians. She claims that the treating physicians "have all reached the same conclusion, i.e., that the claimant is disabled and her prognosis for recovery remains poor." (Plaintiff's Memorandum in Support of Motion to Reverse or Remand [Doc. 7], at 8). As Defendant correctly points out, this statement is contradicted by the record.

A treating physician's opinion regarding the nature and severity of the claimant's

9

impairment will be given controlling weight, if it is well supported by clinical and laboratory

evidence and is not inconsistent with other substantial evidence on the record.   However, a

treating physician's opinion that the claimant is totally disabled is not dispositive, because final

responsibility for determining the ultimate issue of disability is reserved for the Commissioner.

20 C.F.R. §404.1527(d)(2), 1527(e)(1),(2); *see also*, Social Security Ruling 96-5p, 1996 WL

374183, at *5:

> Medical sources often offer opinions about whether an individual
> who has applied for title II or title XVI disability benefits is
> 'disabled' or 'unable to work,'or make similar statements of
> opinions . . .  Because these are administrative findings that may
> determine whether an individual is disabled, they are reserved to the
> Commissioner.   Such opinions on these issues must not be
> disregarded.   However, even when offered by a treating source,
> they can never be entitled to controlling weight or given special
> significance.

Generally, a treating physician's opinion will be given substantial weight unless good cause

is shown to disregard it, <u>Goatcher v. U.S. Dept. of Health and Human Servs.</u>, 52 F.3d 288, 289-

90 (10th Cir. 1995), and the ALJ must give specific, legitimate reasons for disregarding the

treating physician's opinion.  <u>Id.</u>, at 290.  The treating physician's opinion may be rejected if the

doctor's conclusions are brief, conclusory, not supported by specific findings, or are inconsistent

with the record as a whole.  <u>Castellano v. Secretary of Health and Human Servs.</u>, 26 F.3d 1027,

1029 (10th Cir. 1994); <u>Lopez v. Apfel</u>, 131 F.3d 152 (Table, text in Westlaw), No. 97-2133,

1997 WL 758831, at *1 (10th Cir. Dec. 9, 1997).

Factors to be considered in deciding what weight to give any physician's opinion include:

> (1) the length of the treatment relationship and the frequency of
> examination; (2) the nature and extent of the treatment relationship,
> including the treatment provided and the kind of examination or

> testing performed; (3) the degree to which the physician's opinion
> is supported by relevant evidence; (4) consistency between the
> opinion and the record as a whole; (5) whether or not the physician
> is a specialist in the area upon which an opinion is rendered; and (6)
> other factors brought to the ALJ's attention which tend to support
> or contradict the opinion.

Goatcher, *supra*, at 290. *See also*, 20 C.F.R. § 404.1527(d).

Lodoza relies primarily on the opinions of Drs. Gonzales and McCutcheon that she was unable to work. She claims that all of the treating physicians reached similar or identical conclusions, including Dr. Kennedy, who treated her longer and in greater depth than either of the other two doctors, and Dr. Castillo, to whom she was referred by Dr. Kennedy. The record does not support this assertion.

Dr. Kennedy saw Lodoza approximately once a month between May 1994 and April 1995, when she quit seeing him because her employer would no longer pay her medical expenses. He sent her for a bone scan and MRI, and after the diagnostic tests came back negative, he released Lodoza to return to sedentary work on June 20, 1994. There are references in Dr. Kennedy's reports indicating that Lodoza's complaints were magnified or exaggerated. Dr. Kennedy also sent Lodoza to see an orthopedic surgeon, Dr. Castillo, in August 1994. Dr. Castillo reported that Lodoza appeared to be markedly magnifying her symptoms, and he felt that no treatment other than physical therapy for strengthening was required. In September 1994, Dr. Kennedy sent Lodoza for a functional capacity evaluation by CORE. The CORE evaluator, too, reported that Lodoza was magnifying her symptoms, displaying poor consistency of effort, and appeared to be motivated by secondary gain.

Dr. Kennedy took note of these reports in his progress notes. He himself observed that

11

Lodoza's "pain behaviors" were "extremely high," and he felt that some of her responses to physical examination were "voluntary." He consistently reported that Lodoza did appear to have some lower back pain, but he clearly concluded that her symptoms were not disabling, as he repeatedly noted in progress notes that Lodoza was capable of returning to work.

The clinical findings as expressed in Dr. Kennedy's progress notes, particularly the examinations done toward the end of his course of treating her, support his recommendation that she was capable of returning to work. While noting in January 1995 that Lodoza complained of "a fair amount of pain" in the arms, wrists, hip, and lumbar dorsal spine, he stated also that she reported feeling somewhat better and that she was looking for work. He noted only a mild restriction of range of motion in the cervical, dorsal, and lumbar spine, and wrote that her pain had improved somewhat. By February 1995, she was complaining of increased pain, but Dr. Kennedy noted that her reflexes and leg muscle strength were within normal limits, and he stated that she could return to work "in the light capacity, perhaps higher."

Thus, Dr. Kennedy's opinion is in sharp contrast to that of the other treating physicians, Drs. Gonzales and McCutcheon. Dr. Gonzales wrote in progress notes that Lodoza was unable to work, and Dr. McCutcheon wrote, on the two occasions he saw Lodoza, that her history and clinical findings gave evidence to support her complaints. However, as noted above, Dr. Gonzales saw Lodoza on four occasions over a six-month period, and his progress notes contain very little information other than a recounting of the patient's subjective complaints and the unsupported conclusion that Lodoza is unable to work. He ordered no diagnostic tests, and there is no record support showing that he even conducted a physical examination. Dr. Kennedy concluded, only five weeks earlier, that Lodoza was capable of returning to light work, and there

12

is nothing in Dr. Gonzales' brief notes that indicates a change in Lodoza's condition in the interim.  Dr. McCutcheon's notes demonstrate a more thorough examination of the patient, but he does not explain the basis for his conclusion that Lodoza's history and clinical findings "give evidence to support her complaints."

The ALJ properly refused to give controlling weight to any of the treating physicians' opinions as to whether Lodoza was or was not able to return to work.  As noted above, such a determination is reserved to the Commissioner.  In addition, while acknowledging that Dr. McCutcheon rendered an opinion that Lodoza's complaints were supported by medical evidence, the ALJ chose to discount this opinion, and that choice is supported by the record.  He wrote:

> I am aware that Dr. McCutcheon has given his opinion recently that the claimant's complaints are supported by the medical evidence, and that she qualifies for disability benefits (Exhibit 10F). However, his opinion is not in agreement with the rest of the medical opinions stated in the record.  Moreover, it appears to be based mainly on the claimant's reports and demonstrations of difficulties to him, which I do not find credible. This physician did not have the benefit of any recent diagnostic tests to aid his diagnosis, and he does not explain the reason he finds the claimant's condition has deteriorated to the point that she can not work, whereas her treating physician released her to return to work more than two years previously.

(Tr. 16).

The ALJ adequately explained his reasons for rejecting Dr. McCutcheon's conclusion, and he took into account the appropriate factors in deciding which physician's opinion to credit. Considering the relative length of the treatment relationships and frequency of examination, the nature and extent of the respective treatment relationships and the type of examination and testing performed, the degree to which the doctors' various opinions are supported by relevant evidence,

and the fact that the opinions of Drs. Gonzales and McCutcheon are generally brief, conclusory, not supported by specific findings, or are inconsistent with the record as a whole, the Court finds that the ALJ's handling of the treating physicians' opinions is supported by substantial evidence.

C.  ALJ's Credibility Assessment

Lodoza also faults the ALJ for his determination that her subjective complaints of pain lack credibility.  The Commissioner argues that the ALJ properly considered all the evidence, both subjective and objective, and that his finding regarding Lodoza's credibility is supported by substantial evidence.  The Court agrees.

The ALJ held that Lodoza's testimony of subjective complaints and functional limitations, including pain, is not supported by the evidence as a whole in the disabling degree alleged.  (Tr. 15). To support this conclusion, he noted that the x-ray, bone scan, and MRI tests were all negative.  He pointed to several discrepancies in Lodoza's testimony, including her statements as to the reason for her weight loss, her varying testimony as to how long she could sit or stand before the onset of symptoms, her statements regarding how long she could drive, and her statement that her functional capacity evaluation had to be halted because of her blood pressure, which statement was contradicted by the record.  (Tr. 15-16).  The ALJ also noted that Lodoza had taken no prescription medications for pain since the spring of 1995, and that the record was replete with references to her exaggerated pain behaviors.  He therefore found not credible Lodoza's claims of disabling pain.  (Id.).

A claimant who alleges disabling pain must present evidence of medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of an impairment that could "reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. § 404.1529; 42 U.S.C. § 423(d)(5)(A).

14

Lodoza undoubtedly suffered pain at the time of her injury, and for some period of time, and to some extent, in the years thereafter.   The issue is whether her back condition could reasonably be expected to produce the degree of pain alleged, during the period in question.  The ALJ found that it could not.  The Court must "give great deference to the ALJ's conclusions regarding a claimant's credibility . . . [and] may not disturb the ALJ's finding when the appellant's complaints of pain are not supported by the medical evidence in the record."  Campbell v. Bowen, 822 F.2d 1518, 1522 (10th Cir. 1987).  However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988).

Once the claimant demonstrates a pain-causing impairment, the ALJ must consider all the evidence presented that could reasonably produce the pain alleged.  Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987).  Factors to be considered include the claimant's persistent attempts to find relief for the pain, her willingness to try any treatment prescribed, whether she had regular contact with a doctor, the possibility that psychological disorders combine with her physical problems, the nature of her daily activities, the dosage and effectiveness of any medications, and subjective measures of credibility that are peculiarly within the judgment of the ALJ.  Id.; Hargis v. Sullivan, 945 F.2d 1482, 1489 (10th Cir. 1991).  Applying these factors to Lodoza's situation, the Court cannot say that the ALJ erred in his credibility finding.

Lodoza did consistently visit Dr. Kennedy for approximately a year following the accident, but she stopped seeing him in April 1995 and further did not seek medical treatment at all from November 1995 until April 1997, when she returned for a single visit to Dr. McCutcheon.  The record indicates that her last prescription pain medication was taken in the spring of 1995.  This

15

record does not demonstrate "persistent efforts to find relief for pain"; rather, she had regular contact with a doctor only intermittently and did not seem to need continuing doses of prescription medication to control her pain.  In addition, Lodoza's own account of her daily activities indicates that she was not incapacitated with disabling pain.  She noted in Social Security forms that she can do household chores such as vacuuming, doing laundry, making beds, and cleaning bathrooms, although she needs help and needs to take breaks and to rest when she completes these activities.  She prepares all meals for her family.  She does grocery shopping, although again she reports that she needs help with this and cannot put the groceries away once she gets them home.  She takes her sons to ball games and drives around town.  She cares for her own grooming and dressing needs, although sometimes showering takes a long time.  (Tr. 34, 36-37, 84, 93, 98-102).

A review of the record, noting particularly the several comments from medical providers regarding symptom magnification and inconsistency of effort, and taking the Luna factors into consideration and applying the rule that the ALJ's credibility determination will not be set aside if supported by substantial evidence, the Court finds that the ALJ properly determined that Lodoza's subjective complaints of pain lack credibility.  The Court finds nothing else in the record to support reversal of the Commissioner's decision.

## Recommended Disposition

That Lodoza's Motion to Reverse or Remand [Doc. 6] be denied and the matter be dismissed with prejudice.

Lorenzo F. Garcia
United States Magistrate Judge

16

**SOCIAL SECURITY ADMINISTRATION**
**Office of Hearings and Appeals**

14

**DECISION**

| | |
|---|---|
| <u>IN THE CASE OF</u> | <u>CLAIM FOR</u> |
| | Period of Disability and |
| | Disability Insurance Benefits |
| <u>YOLANDA LODOZA</u> | |
| (Claimant) | |
| | <u>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</u> |
| | (Social Security Number) |
| <u> </u> | |
| (Wage Earner) | |

The present appeal arises following the filing of a request for hearing by the claimant herein, Yolanda Lodoza, after she had received earlier denials by the Social Security Administration.

My decision is unfavorable to the claimant on the issues below. This decision is based on consideration of documentary evidence of record listed as exhibits, as well as testimony received at a hearing held on July 16, 1997 in Las Cruces, New Mexico. During the course of the present appeal, the claimant was represented by Jay Rubin, Attorney at Law. After careful consideration of the testimony and all the evidence, I FIND:

1.  The claimant met the special earnings requirements of the Act on February 25, 1994, the date she alleges she became unable to work, and continues to meet them through at least the date of this decision.

2.  The claimant has not engaged in substantial gainful activity during the period under review.

3.  The claimant alleges the following impairments: chronic back pain with lower extremity radiculopathy, chronic headaches, obesity, and hypertension. I specifically find that the claimant has not met her burden of demonstrating, pursuant to Social Security Ruling 96-3p, that she has experienced more than a minimal impact on her work related functional capacities due to headaches or hypertension. She reported to the consultative examiner in September 1996 that she had a headache every day, but this was relieved by over the counter medications (Exhibit 5F). She did not testify to persisting headaches during her hearing before me, nor did she indicate any particular work related functional restrictions caused by headaches. She has not required treatment for headaches, and no doctor has indicated that she has headaches which cause any particular problem or which do not respond to treatment.

YOLANDA LODOZA
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                                                          15
                                    2

The claimant testified that her functional capacities
evaluation performed in September 1994 had to be stopped
because her blood pressure was elevated. However, her doctor
did not mention that this study had to be interrupted
because of the claimant's elevated blood pressure (Exhibit
11F), and there is no evidence that she has had hypertension
which has been difficult to treat and which does not respond
to medications, or which has resulted in any end organ
damage. I note that the consultative examiner diagnosed
diabetes mellitus (Exhibit 5F). However, the claimant
testified that she does not have diabetes, and there is no
other evidence of record which indicates that she does have
this disease. The consultative examiner's opinion was based
on his observations during one physical examination, he had
no experience treating the claimant over a period of time,
and he did not have the benefit of any diagnostic tests to
confirm his diagnosis. His diagnosis appears therefore to
have ben erroneous, and it is given no weight herein.

4.   During the period under review, the severity of the
     claimant's impairments has not met or equaled a listed
     impairment as described in Appendix 1, Subpart P,
     Regulations No. 4. I have specifically reviewed sections
     1.00 and 10.00.

5.   The claimant's testimony of subjective complaints and
     functional limitations, including pain, was not supported by
     the evidence as a whole in the disabling degree alleged and
     therefore lacked credibility. Her x-rays, bone scan, and
     lumbar MRI were all negative. She testified that she has
     lost 35 pounds because of her back pain. However, she
     reported to the consultative examiner that she has been
     dieting and managed to lose 40 pounds (Exhibit 5F). She
     testified that she can not sit or stand for more than 25 or
     30 minutes, whereas she reported to the consultative
     examiner that her back symptoms became worse only after
     sitting and standing for more than 2 hours (Exhibit 5F).
     There is no evidence of worsening of her condition to
     explain this discrepancy. She testified and has reported
     that she takes that she takes prescription pain medications.
     However, while she reported that these are prescribed by a
     Dr. Gonzales (Exhibit 8E), there is no documentary evidence
     that she has been seen or treated by a Dr. Gonzales, or that
     he has prescribed medications. I note that the claimant
     visited Dr. McCutcheon in April 1997, at the time she
     indicates that Dr. Gonzales prescribed her medications, but
     there is no evidence that Dr. McCutcheon prescribed pain
     medications (Exhibit 10F). The evidence otherwise reveals
     that the claimant was taking no prescription medications

YOLANDA LODOZA
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

3

16

during her consultative evaluation in September 1996, and that she was last prescribed medications in the spring of 1995.

The claimant testified that she drives only short distances locally, whereas she reported to the consultative examiner that she had driven to the examination, and that the trip took an hour and fifteen minutes (Exhibit 5F). She testified that her functional capacities evaluation performed in September 1994 had to be stopped because her blood pressure was dangerously elevated. However, there is no evidence that her physician interrupted that evaluation for any reason, or that she had elevated blood pressure readings (Exhibit 11F). The claimant's treating physician has observed extreme and significant pain behaviors (Exhibit 1F). The consultative examiner observed nonphysiological pain behaviors (Exhibit 5F). And during her examination in April 1997 the claimant was observed to have an inappropriate affect (Exhibit 10F).

6.    The claimant has retained a residual functional capacity which supports sedentary work during all consecutive 12 month periods under review. Nonexertional factors have not significantly altered this work capacity. This conclusion is supported by the opinion of the medical consultant (Exhibit 6F), the consultative examiner's opinion (Exhibit 5F), and her treating physician's opinion (Exhibits 1F and 11 F). The medical consultant found no evidence of functional restrictions, and the consultative examiner found no evidence of significant functional impairment. The claimant's treating physician found that she had achieved maximum medical improvement as of October 1994, that she was able to perform sedentary work activities at that time, and as of February 1995 she was able to do at least light work. The claimant's testimony of persisting symptoms and functional restrictions is not credible for the reasons provided in Finding #5 above.

I am aware that Dr. McCutcheon has given his opinion recently that the claimant's complaints are supported by the medical evidence, and that she qualifies for disability benefits (Exhibit 10F). However, his opinion is not in agreement with the rest of the medical opinions stated in the record. Moreover, it appears to based mainly on the claimant's reports and demonstrations of difficulties to him, which I do not find credible. This physician did not have the benefit of any recent diagnostic tests to aid his diagnosis, and he does not explain the reason he finds the claimant's condition has deteriorated to the point that she can not work, whereas her treating physician released her to return to work more than two years previously. His opinion also does not indicate whether the claimant is disabled only

YOLANDA LODOZA
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

17

4

from her past relevant work, and what disability benefits he
feels she qualifies for. For all these reasons, I find this
opinion to be of little help in my evaluation of the
claimant's work related functional capacities, and it is
accorded little weight herein. Since I find that the
claimant has been able to perform sedentary work activities,
the testimony of the vocational expert solicited at the
hearing is not necessary for deciding this case.

7.   During times at issue, the claimant has been unable to
perform her past relevant work as a chili sorter or a dairy
worker.

8.   The claimant has been a "younger individual" during all
times at issue.

9.   The claimant has a sixth grade education obtained in Mexico.
She is unable to communicate in English.

10.  Reference to Rule 201.23, Table No. 1, Appendix 2, Subpart
P, Regulations No. 4, directs a conclusion that, considering
the  claimant's residual functional capacity, age,
education, and work experience, she is not disabled. Even
were I to credit the claimant's testimony that she is unable
to sit, stand or walk for prolonged periods, vocational
expert testimony elicited at the hearing establishes that
jobs exist in significant numbers the claimant has been able
to perform, which allows her to alternate sitting, standing
and walking throughout the work day. Examples of such jobs
are jobs as a hand sorter and a cashier.

11.  The claimant was not under a "disability," as defined in the
Social Security Act, at any time through the date of this
decision.

## DECISION

IT IS MY DECISION that, based on the application filed on June 4,
1996, the claimant is not entitled to a period of disability or
disability insurance benefits under sections 216(i) and 223,
respectively, of the Social Security Act.

WILLIAM W. BIVINS
United States
Administrative Law Judge

AUG 1 2 1997

Date